BENEFIT TRUST LIFE INSURANCE COMPANY *v.* LEE, et al.

No. 42869          February 24, 1964          160 So. 2d 909

*John W. Keyes,* Collins, for appellant.

*John D. Kervin,* Collins, for appellees.

KYLE, P. J.

This case is before us on appeal by the Benefit Trust Life Insurance Company (prior to January 1, 1963,

known as Benefit Association of Railway Employees), a legal Reserve Mutual Insurance Company incorporated under the insurance laws of Illinois, defendant in the court below, from a judgment of the Circuit Court of Covington County rendered in favor of Mrs. Vera E. Lee and James B. Jordan, plaintiffs, in an action on a lifetime disability policy issued by the appellant to James W. Jordan, now deceased, on December 28, 1956.

The record shows that the policy was a lifetime disability policy providing benefits for loss of life or time by accidental bodily injury and for loss of time caused by sickness, to the extent therein provided. The schedule of benefits included ''Accidental Death Benefit: $2,500.'' The appellees, Mrs. Vera E. Lee and James B. Jordan, were named as beneficiaries of the accidental death benefit. The policy provided, among other things, as follows:

EXHIBIT ''A''

''LIFETIME DISABILITY POLICY
''THIS POLICY PROVIDES BENEFITS FOR LOSS OF LIFE OR TIME BY ACCIDENTAL BODILY INJURY AND FOR LOSS OF TIME CAUSED BY SICKNESS, TO THE EXTENT HEREIN PROVIDED. THIS POLICY IS RENEWABLE AT THE OPTION OF THE ASSOCIATION ONLY.
''BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES
''CHICAGO (BARE) ILLINOIS

''A legal Reserve Mutual Insurance Company incorporated under the insurance laws of Illinois and hereinafter called the Association hereby insures the Person named in the Schedule (hereinafter called the Insured) against accidental loss of life within ninety (90) days after an accidental bodily injury and loss of time resulting while this policy is in full force from (1) accidental bodily injury sustained on or after the effec-

tive date of this policy (hereinafter referred to as 'injury') and (2) sickness or disease which is contracted after this policy has been in force for thirty (30) days (hereinafter referred to as 'sickness'), subject to the provisions, conditions, and limitations contained herein.

"This policy is issued in consideration of the statements and agreements made by the insured in the application, a copy of which is attached hereto and made a part hereof, and the payment in advance of the premium stated in the Schedule below. All periods of insurance shall begin and end at Twelve o'clock Noon, Standard Time, at the residence of the Insured. This policy may be renewed for like periods of time, subject to the consent of the Association, by payment of renewal premiums in advance thereafter. The Association's acceptance of premium at its home office shall constitute its consent to renewal.

## "SCHEDULE

| | |
|---|---|
| Accidental Death Benefit: | $2500 |
| Regular Monthly Benefit: | $ 100 |
| Premium: | $ 139.30 |
| Period of Insurance: | 12 months |
| Effective Date of Policy: | Dec. 28, 1956 |
| First Renewal Premium Due Date: | Dec. 28, 1957 |
| Sickness Disability Elimination Period: | -0- Days |

Policy Number LD-218546
Name of Insured: James W. Jordan
The beneficiary of the accidental death
    benefit shall be: Vera E. Lee, James B. Jordan
" * * *

"PART I. DEFINITIONS:

"A. * * *

"B. The terms 'totally disabled' or 'total disability', whenever used in this policy, shall mean disability which wholly and continuously prevents the Insured

from performing any and every duty pertaining to any business, occupation or profession and which necessitates regular treatment by a licensed physician or surgeon other than himself.

" * * *

"PART II. ACCIDENTAL DEATH BENEFIT:

"If death of the Insured shall result solely from 'injury' within ninety (90) days after the injury is sustained, the Association will pay the Accidental Death Benefit provided in the schedule to the beneficiary.

" * * *

"PART IV. SICKNESS BENEFITS:

"A. NON-CONFINING SICKNESS: If sickness which causes continuous total disability does not confine the Insured continuously within doors, the Association will pay, commencing with the first treatment by a legally qualified physician or surgeon, other than himself, benefits at the rate of the Regular Monthly Benefit, but not exceeding twelve (12) consecutive months.

"B. CONFINING SICKNESS: If sickness confines the Insured continuously within doors for one day or more and requires regular visits therein by a legally qualified physician or surgeon, other than himself, the Association will pay, commencing with the first such visit, benefits at the rate of the Regular Monthly Benefit so long as such confinements remains continuous and causes total disability and necessitates total loss of time.

" * * *

"PART VI. WAIVER OF PREMIUMS:

"If the Insured is totally disabled, the Association will waive the payment of any premium which becomes due within the compensable period of total disability, provided the Insured has been continuously totally dis-

abled for at least ninety (90) consecutive days immediately preceding the due date of such premiums.''

The plaintiffs' declaration was filed on September 26, 1961. The original policy was attached as Exhibit ''A'' to the declaration and made a part thereof.

The plaintiffs alleged in their declaration that on December 28, 1956, James W. Jordan, deceased, purchased of and from the defendant insurance corporation the above mentioned insurance policy numbered LD-218546, which provided, among other things, for the payment of $2500 accidental death benefit to the plaintiffs in the event said James W. Jordan was accidentally killed, such accidental death benefit being payable to the plaintiffs as beneficiary, as stated in Part II of said policy. If death of the insured shall result solely from injury within ninety (90) days after the injury sustained, * * *.''

The plaintiffs further alleged that under the provisions of Part VI of the policy the premiums were waived in the event the insured became totally disabled; that on or about April 1, 1960, the insured became totally disabled within the provisions of Part IV-A of the policy, and thereafter continued to be totally disabled within the meaning of the provisions of said policy until his death on July 28, 1961; and that by virtue of the insured's total disability there were no premiums due or to become due under the provisions of Part VI of the policy.

The plaintiffs further alleged that the insured was involved in an automobile accident and was accidentally killed on July 28, 1961; that the immediate cause of his death was cerebral concussion due to a fracture of the skull, due to a car wreck, as shown by death certificate signed by Dr. Joseph E. Johnston, of Mount Olive, Mississippi; that demand had been made upon the defendant for the payment of the accidental death benefit payable to plaintiffs under the provisions of Part II

of the policy; that the defendant had denied liability for the payment of said accidental death benefit on the ground that the policy was renewable only at the option of the association, and the association by letter dated November 10, 1960, had advised the insured that it would be unable to renew the policy when it became due on December 28, 1960, that the policy had lapsed on that date, and no benefits were payable for any claim for new conditions arising after that date. The plaintiff further alleged that the defendant had no right to cancel the accidental death benefit provision of the policy while the insured was disabled, and there was no reasonable ground for the denial of payment of said benefit. The plaintiff therefore sued and demanded judgment against the defendant for the sum of $2,500.

In its answer the defendant admitted the issuance of the above mentioned insurance policy, but denied that the insured was accidentally killed as alleged in the plaintiffs' declaration; and the defendant denied that any accidental death benefits were payable under Part II of the policy. The defendant admitted that the policy contained a provision in Part VI thereof for a waiver of premiums, but the defendant denied specifically that the provision for waiver of premiums was applicable in this cause. The defendant averred as an affirmative defense that the policy was renewable at the option of the association only; that the defendant elected not to renew the policy on its renewal dated of December 28, 1960; that the insured was given written notice of the intention of the defendant not to renew the policy; and therefore the policy sued on expired by its own terms on the renewal date of December 28, 1960. The defendant admitted that demand had been made for the payment of benefits under the policy, but denied that any benefits were due the plaintiffs under the policy. The defendant incorporated in its answer a motion to strike the declaration, alleging as grounds therefor that on

November 10, 1960, the defendant had exercised its option not to renew the policy at its renewal date which was December 28, 1960, and had notified the insured by letter that the policy would not be renewed.

On April 27, 1962, the defendant filed notice of an additional affirmative defense, in which the defendant averred that, in conformity with Section 5687-03, Miss. Code of 1942, Rec., subparagraph (B)(6) thereof, the policy sued on, in Section IX thereof, expressly provided that, "Any provision of this policy which, on its effective date, is in conflict with the statutes of the State in which the insured resides on such date is hereby amended to conform to the minimum requirements of such statutes."

The defendant also averred in its notice of additional affirmative defense that Code Section 5687-03(B)(5) authorized the insurer to cancel the policy at any time by written notice delivered to the insured, or mailed to his last address, stating when, not less than five (5) days thereafter, such cancellation shall be effective, and after the policy had been continued beyond its original term to cancel the policy at any time by written notice delivered or mailed to the insurer, "effective upon receipt or on such later date as may be specified in such notice." The defendant therefore specifically pleaded the force and effect of the above mentioned statute, and the notice of November 10, 1960, addressed to the insured, as a complete defense and bar to the declaration filed by the plaintiffs and an additional ground for the defendant's motion to strike the plaintiffs' declaration.

The plaintiff filed an answer to the affirmative defenses set forth in the defendant's answer and motion to strike, on July 27, 1962, and in its answer the plaintiffs alleged: (1) That the defendant was estopped to allege forfeiture or cancellation of the policy under the provisions of paragraph VI of the policy; (2) that the

defendant was estopped to invoke the provisions of Section 5687-03 (B) (6) for the reason that on August 26, 1961, at a period subsequent to the letter of November 10, 1960, the defendant paid to the Circuit Clerk of Covington County the sum of $1,105.50, for the period commencing May 1, 1960, and ending May 30, 1961, and by the payment of said sum the defendant treated the policy as in full force and effect.

Depositions of witnesses were taken by agreement of the parties on April 6, 1962; and at a later date the cause was heard by the trial judge on the defendant's motion to strike the declaration of the plaintiff. The motion to strike was overruled. The parties then waived a jury trial, and the cause was heard on its merits by the trial judge in vacation upon the pleadings and depositions taken by agreement of the parties.

The testimony showed that the insurance policy was issued to the insured on December 28, 1956, and that the annual renewal premiums were paid thereafter up to and including the renewal premium due December 28, 1959; that the insured was given a written notice by letter dated November 10, 1960, of the appellant's intention not to renew the policy, on the renewal date of December 28, 1960; and no further premium payments were made by the insured thereafter. The testimony also showed that on July 28, 1961, the insured was found dead in his automobile which had collided with a gum tree located at the foot of the roadway embankment adjacent to the Salem Church road, a farm to market paved road, about six miles north of the Town of Collins.

There was no actual eyewitness to the accident. But Mrs. Marie Mathis, whose house fronted on the Salem Church road, testified that she was standing in her yard and saw Mr. Jordan pass her house about two minutes before the accident occurred. He was driving his Falcon Ford automobile at a rate of speed of approximately 40 miles an hour. He threw up his hand

as a friendly greeting to her when he passed. There was a curve in the road only a few hundred feet ahead of him, and as he entered the curve Mrs. Mathis heard a rumbling noise and a crash. She knew that something had happened, and she got in her car and went to the scene of the accident immediately. She saw Mr. Jordan's car at the foot of the roadway embankment. The front of the car appeared to be wrapped around a gum tree. The windshield and hood of the car appeared to be completely demolished. Mr. Jordan was sitting in the car. She did not know whether he was alive or dead, but he was still bleeding from the nose and blood was dripping down in his hand. It appeared to Mrs. Mathis that Mr. Jordan had driven straight ahead instead of taking the curve. Mrs. Mathis was nervous and upset and left immediately to summons help. Mrs. Louise Mayfield, who lived in the same neighborhood, arrived at the scene of the accident a few minutes later. Mrs. Mayfield's testimony as to what she saw when she arrived at the scene of the accident was substantially the same as that of Mrs. Mathis.

Dr. Joseph E. Johnston, who examined the body of the deceased about an hour and a half after his death, testified that he had treated Mr. Jordan for hardening of the arteries, dizzy spells, falling out spells and fainting spells; and when he saw the lifeless body of Mr. Jordan on the morning of the accident in the wrecked automobile by the roadside, he assumed that Mr. Jordan had suffered one of his fainting spells and had run off the road. But that was an assumption. He had no way of knowing that. The doctor stated that he signed the death certificate, which showed that the cause of death was "cerebral concussion due to fracture of skull, due to car wreck." The medical certificate, which appears in the record, also showed "Other significant conditions contributing to death, but not related to the terminal disease condition" mentioned above: "Athe-

rosclerosis — syncope * * * apparently fainted while driving car, and car ran off road and struck tree." Dr. Johnston was asked whether he had treated Mr. Jordan prior to July 28, 1961. His answer was that he had been treating Mr. Jordan since 1957. He stated that he was treating him on December 28, 1960, and he was disabled at that time. He stated that Mr. Jordan was not able to engage in any physical activity or any gainful employment. On cross-examination by the defendant's attorney, Dr. Johnston was asked, What is the nature of atherosclerosis? His answer was, "In lay terminology that is hardening of the arteries, and it means generally throughout the body." The doctor was then asked: "Cannot atherosclerosis cause death?" His answer was: "It can cause death * * * not primarily, but secondarily it can cause death. It in itself is just the narrowing of the circulation and doesn't cause death." On redirect examination by the plaintiffs' attorney the doctor was asked whether the atherosclerosis in his opinion killed Mr. Jordan. His answer was: "It is not my opinion that it killed him."

Dr. R. L. Alexander, Jr., who was called to testify as a witness for the defendant, testified that he had examined Mr. Jordan on or about August 31, 1960. He was suffering from arteriosclerosis. He was having episodes of dizziness, weakness, inability to concentrate, inability to engage in any activity without tiring very quickly. The doctor was asked whether, considering the nature of the disease from which Mr. Jordan was suffering, there was a possibility of his dying at any time and whether, considering his age and condition, a sudden death was a probability. His answer was that it was possible for a man of Mr. Jordan's age with arteriosclerosis to have a catastrophic episode causing sudden death, but he could not say that it was probable. The doctor, in answer to a hypothetical question propounded to him by the defendant's attorney, based

upon the facts testified to by the plaintiffs' witness, Mrs. Marie Mathis, stated that it was his opinion that Mr. Jordan due to his age and condition could have lost control of his car. The doctor was then asked whether, in his opinion, it was possible in this case to determine without an autopsy that Mr. Jordan had a cerebral concussion. His answer was that, in his opinion, such fact could be determined only by an autopsy. On cross-examination by the plaintiffs' attorney the doctor stated that it was his opinion, based upon the examination made by him on August 31, 1960, that Mr. Jordan was totally disabled so far as engaging in farming, carpentry, or other occupations which required any physical activity.

At the conclusion of the hearing of the case on its merits the trial judge entered a judgment in favor of the plaintiffs for the amount of the accidental death benefit provided for in the policy, with interest thereon from July 28, 1961. From that judgment the defendant has prosecuted this appeal.

Three points have been assigned and argued by the appellant's attorney as ground for reversal of the judgment of the lower court: (1) That the appellant insurer lawfully exercised its right of non-renewal of the insurance policy prior to December 28, 1960; therefore, the policy was of no further force or effect after that date, and the motion to strike the declaration should have been sustained; (2) that the burden of proof was upon the appellees to prove that the death of the deceased was the result of accidental means, and the appellees failed to meet that burden of proof; and (3) that the court erred in rendering a judgment in favor of the appellees.

We think there is no merit in the appellant's contention that the appellant insurer lawfully exercised its right of non-renewal of the insurance policy prior to December 28, 1960, and therefore, the policy was of

no further force or effect after that date, and the motion to strike the declaration should have been sustained. It is true that the policy states: "This policy is renewable at the option of the Association only. * * * This policy may be renewed for like periods of time, subject to the consent of the Association, by payment of renewal premiums in advance thereafter. The Association's acceptance of premiums at its home office shall constitute its consent to renewal." But we are not concerned here with the provisions of the policy relating to the payment of a renewal premium in advance to keep the policy in effect for another twelve months period, or the right of the Association to accept or reject a renewal premium. We are dealing here with an unqualified agreement by the Association to "waive the payment of any premium which becomes due within the compensable period of total disability, provided the insured has been continuously totally disabled for at least ninety (90) consecutive days immediately preceding the due date of such premiums," and the Association's attempt to cancel the policy prior to the due date of the fifth annual premium which was to become due on December 28, 1960.

As stated by the Court in Harwell v. Mutual Benefit, Health and Accident Association (1945), 207 S.C. 150, 35 S.E. 2d 160, 161 A.L.R. 183, "We recognize, of course, the general rule that the ordinary insurance policy covering accident is generally regarded as a species of term insurance, not renewable except with the consent of the insurer. But this formula is not so rigid that it may not undergo modification when the particular provisions of a policy require it."

The policy in this case showed in bold face type that it was a "Lifetime Disability Policy." The policy stated: "This policy provides benefits for loss of life or time by accidental bodily injury and for loss of time caused by sickness, to the extent herein provided." The policy

provided for the advance payment of a premium of $139.30 for a period of 12 months. ''The effective date'' of the policy was December 28, 1956. ''The first renewal premium due date'' was December 28, 1957.

Part IV-A of the policy provided for the payment of non-confining sickness benefits, ''If sickness which causes continuous total disability does not confine the insured continuously within doors'', such benefits to be paid ''at the rate of the Regular Monthly Benefit, but not exceeding twelve (12) consecutive months.'' Part IV-B of the policy provided for the payment of confining sickness benefits, ''If sickness confines the insured continuously within doors'', such benefits to be paid ''at the rate of the Regular Monthly Benefit so long as such confinement remains continuous and causes total disability and necessitates total loss of time.''

Part VI of the policy, under the heading ''Waiver of Premiums'' then provides as follows: ''If the insured is totally disabled the Association will waive the payment of any premium which becomes due within the compensable period of total disability, provided the Insured has been continuously totally disabled for at least ninety (90) consecutive days immediately preceding the due date of such premiums.''

In 29 Am. Jur., 632, 633, Insurance, Sec. 250, the textwriter says: ''In determining the intention of the parties to an insurance policy, the policy should be considered and construed as a whole, and if it can reasonably be done, that construction will be adopted which will give effect to the whole instrument and to each of its various parts and provisions. The policy must be viewed by its four corners, and all parts and clauses must be construed to determine if and how far one clause is modified, limited, or controlled by others. Seeming contradictions should be harmonized if reasonably possible. * * * A construction of an insurance policy which entirely neutralizes one provision should not be

adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent. * * *." William Soukoup v. Employers' Liability Assurance Corporation Ltd. (1937), 341 Mo. 614, 108 S.W. 2d 86, 112 A.L.R. 149; Wyatt v. Wyatt (1953), 239 Minn. 434, 58 N.W. 2d 873; English v. Virginia Surety Co. (1954), 196 Tenn. 426, 268 S.W. 2d 338.

It clearly appears from the testimony of Dr. Johnston, who had treated the insured continuously since 1957, and the testimony of Dr. Alexander, who examined the insured on or about August 31, 1960, that the insured had been continuously totally disabled for a period of more than ninety (90) consecutive days immediately preceding the due date of the premium which was to become due on December 28, 1960, within the compensable period of the insurer's total disability. The insurer had obligated itself to waive the payment of that premium, which meant that the policy would be kept in force during the next 12-months "period of insurance" without the payment of any premium; and the insurer's attempt to cancel the policy prior to the due date of that premium in order to relieve itself from liability for the payment of claims for accidental death or sickness benefits which might accrue during the next succeeding 12-months period if the policy should be kept in force, was, in our opinion, violative of the provisions of Part VI of the policy; and therefore ineffective. Cohen v. Mutual Benefit Health & Accident Ass'n. (1944), 134 N.J. Eq. 499, 36 A. 2d 288.

"Waiver of premium" is defined in Webster's Third New International Dictionary Unabridged, at page 2570, as, "A clause in an insurance policy providing continued coverage without payment of premiums under stated circumstances." The obvious purpose of the waiver provision in an insurance policy is to waive payment of a premium which the insured and the company contemplate

the insured will likely be unable to pay on account of sickness or other disability.

It is generally held that the insurer cannot avoid liability under a health and accident insurance policy for a claim which has come into being under the terms of the policy by declining to accept renewal premiums tendered after the accrual of the claim. 29 Am. Jur., 722, Insurance, Sec. 366; Prescott v. Mutual Benefit Health and Accident Ass'n. (1938), 133 Fla. 510, 183 So. 311, 119 A.L.R. 525. Neither can an insurer, in our opinion, avoid liability under a health and accident insurance policy, under circumstances such as we have here, by attempting to cancel the policy prior to the due date of a premium which the insurer has expressly agreed in the policy to waive.

There is no merit in the appellant's contention that the appellant was authorized to cancel the policy under the provisions of subparagraph (B)(5), Code Section 5687-03, notwithstanding the agreement to waive the premium which was to become due on December 28, 1960. Subparagraph (B)(5), Code Section 5687-03, does not require that the insurer cancel the policy. It merely requires that, if the insured elects to cancel the policy, notice must be given to the insured within the time and in the manner provided by the statute, and that "cancellation shall be without prejudice to any claim originating prior to the effective date of cancellation."

For the reasons stated above we think there was no error in the action of the trial judge in overruling the appellant's motion to strike the plaintiffs' declaration.

We also think there is ample evidence in the record to support the findings of the trial judge that the death of the deceased resulted solely from an accidental bodily injury sustained while the policy sued on was in full force, and that the plaintiffs were entitled to recover the accidental death benefit provided for in the policy.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Ethridge, McElroy, Rodgers and Patterson, JJ.*, concur.