**Sylvia King CHAMBERS, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA,
Defendant.**

**Civ. A. No. J90–0063(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 22, 1991.

Paul D. Snow, III, Jackson, Miss., for plaintiff.

Kenna L. Mansfield, Jr., Wells, Wells, Marble & Hurst, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant The Prudential Insurance Company of America (Prudential), and the cross-motion of plaintiff Sylvia King Chambers for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Each party has responded to the motion of the other and the court has considered the memoranda of authorities together with attachments submitted by the parties.

Prior to his death in an April 2, 1988 automobile accident, Edmund King, Jr., plaintiff's husband, had been employed by Avondale Industries, Inc. (Avondale), and had been a participant in Avondale's insurance program, which included group life and accidental death and dismemberment insurance issued by Prudential. Plaintiff was the designated beneficiary of her husband's life insurance policy and filed a claim for benefits under the group policy issued by Prudential. When that claim was denied, plaintiff brought this action seeking to recover life insurance benefits which she alleges Prudential has wrongfully refused to pay.[1] Prudential asserts in response to plaintiff's averments that at the time of his death on April 2, 1988, there was no longer in effect a policy of life insurance for Edmund King inasmuch as

---

1. Plaintiff initiated this action in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Prudential removed the case to this court based upon both diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction since the policy at issue is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA).

Mr. King had cancelled such policy on March 31, 1988. Each party seeks summary judgment.

The material facts giving rise to plaintiff's claim in this cause are essentially without dispute. Avondale established and maintained an employee welfare benefit plan providing various types of benefits to its eligible employees, including Mr. King, which Avondale funded through various means. In addition to the life insurance and accidental death and dismemberment insurance issued by Prudential, business travel accident insurance was provided by Standard Reliance Insurance Company, as well as hospital and medical insurance furnished by Blue Cross of Louisiana. Avondale, which was the plan administrator, maintained an employee benefits department which handled the administrative responsibilities and duties regarding group insurance, including enrolling employees for coverage and handling cancellations and terminations of employees' insurance. In addition, Avondale maintained records of employees covered at any given time, and was responsible for notifying Prudential of the number of persons insured during each month and remitting premiums to Prudential based upon that number of employees.

Avondale treats its employee welfare benefit plan as a total package, requiring that any employee desiring to enroll in the plan participate in the entire plan; that is, the employee may not elect to participate only in certain insurance programs but rather must take part in all of them or none. Consequently, an employee who chooses to enroll in the plan or cancel his coverage under the plan completes forms prepared and provided by Avondale, rather than separate forms furnished by the various insurers providing Avondale's plan coverage. Moreover, Avondale requires that employees covered during any part of a calendar month be covered for the entire calendar month. Thus, when an employee cancels his insurance, Avondale continues to deduct the premium from his check for the remainder of that month and the employee is covered through the end of that month.

The premiums for life insurance coverage provided by Prudential are contributory; Avondale pays a percentage of the premium attributable to its employees and the remainder is funded by employee payroll deductions. Avondale considers the work week to run from Monday through Sunday. Payroll is prepared on Monday for the work week ending the day before, with appropriate payroll deductions for that same period of time. The checks, however, are not presented to employees for that work week—Monday through Sunday—until the following Friday.

On Thursday, March 31, 1988, Edmund King went to the Avondale employee benefits office and advised Dolores Guidroz, an insurance clerk, that he wanted to cancel his insurance. King at that time signed an Avondale group insurance form revoking his authorization to make deductions from his pay for the purpose of insurance. The form provided:

> I hereby surrender the above certificate(s) for cancellation. I will make no further contributions to apply toward the cost of the insurance and hereby revoke my authorization to make deductions from my pay for the purpose of insurance.

> . . . . .

> It is understood and agreed that by the completion of this form I forfeit my rights to coverage under the Group Policy, and should I elect at a later date to participate in the plan, I must furnish at my own expense, evidence of insurability satisfactory to Avondale Industries, Inc.

The dispositive issue in the case at bar is whether Edmund King's cancellation became effective before his death, as contended by Prudential, or whether, as Mrs. King urges, his attempted cancellation was not to and did not take effect until some time thereafter. In this regard, the group insurance benefits booklet drafted by Avondale and provided to its participating employees provides:

> When Insurance Terminates.

> All insurance ceases at the end of the calendar month following termination of

your employment, cessation of your contributions, the start of a personal leave of absence, or when the insurance contracts terminate, whichever is earliest. Plaintiff initially contends that this termination provision is ambiguous and must therefore be construed against the drafter. It could, according to plaintiff, be reasonably interpreted to mean that insurance ceases not at the end of the calendar month in which contributions cease, but rather at the end of the calendar month following the calendar month in which there was a cessation of the contributions.

Even were the court to assume for the sake of argument that the disputed provision is ambiguous, that alone would not lead to an interpretation in favor of plaintiff since the rule of construction upon which plaintiff relies, that of resolving ambiguities in favor of the insured, is inapplicable in the present context. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1988), the Supreme Court, analogizing ERISA plans to trust agreements, stated as follows:

> As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation. ... The terms of trusts created by written instruments are "determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible." Restatement (Second) of Trusts § 4, Comment d (1959).

It has been held, and properly so, that in accordance with *Bruch*, the rule of construction urged by plaintiff may not be applied to interpret the terms of an ERISA plan. *See Brewer v. Lincoln National Ins. Co.*, 921 F.2d 150, 153 (8th Cir.1990). The *Brewer* court observed, in reliance on *Bruch*, as follows:

> We have previously interpreted *Bruch* to mean that "unless the plan language specifies otherwise, courts should construe any disputed language 'without deferring to *either* party's intention.'"

*Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327, 1329 (8th Cir.1989) (quoting *Bruch*, 489 U.S. at 112, 109 S.Ct. at 955).

*Brewer*, 921 F.2d at 153–54. *See also McMahan v. New England Mutual Life Ins. Co.*, 888 F.2d 426, 429 (6th Cir.1989) (rule requiring ambiguity be construed against drafter of instrument not a rule regulating insurance so as to be saved from ERISA preemption). If ambiguous, then, the court's task is not to construe the provision at issue in a manner favorable to plaintiff but rather in a manner consistent with Avondale's intent. So construing the group booklet provision relative to termination of coverage, the court must conclude that Edmund King's insurance coverage remained effective through March 31, 1988, with the termination of the policy taking effect April 1, 1988. One could not seriously contend that Avondale would intend to provide coverage for a full month, at no cost to the employee, for an employee who has elected to cancel his coverage, or for an employee who has been terminated from employment. The court perceives no reasonable basis for interpreting the provision in the manner urged by plaintiff.

Plaintiff next argues that the benefits booklet termination provision quoted above is inapplicable since the group policy itself also contains a termination provision, and the group policy controls over the booklet by virtue of the following statement contained in the group booklet:

> The coverages, benefits, and provisions described in this booklet are subject to the terms of the various policies which alone constitute the contracts under which payments are made.

The group policy states:

> The insurance of an employee under a coverage will automatically terminate when:
>
> 4. If the insurance is contributory, any contribution required of him for any insurance under the group policy is not made when due.

It is undisputed in this case that the last date upon which a deduction was made from Mr. King's paycheck for insurance

contributions was March 27, 1988. Plaintiff argues that since the next date scheduled for payroll deductions was April 3, 1988, then that is the date on which Mr. King's next contribution was "due." And, since he died the day before that contribution was "due," it cannot be said that King failed, prior to April 3, to make a contribution when due. Plaintiff thus reasons that coverage was still in effect on April 2.

■ The flaw in plaintiff's reasoning is that no premium contribution was "due" from Edmund King at any time after April 1. Under Avondale's procedures, an employee who has voluntarily elected to discontinue his coverage is not thereafter expected to make contributions for insurance coverage, except through the remainder of the month in which the election is made. Mr. King elected to cancel his coverage on the last day of the month of March; hence, his cancellation became effective at midnight of that date. Moreover, in cancelling his coverage, Mr. King explicitly stated that he would "make no further contributions to apply toward the cost of the insurance and hereby revoke my authorization to make deductions from my pay for the purpose of this insurance." Since no premium contributions were required of Mr. King from and after April 1, 1988, the provision in the group policy relied upon by plaintiff is simply inapplicable, and the controlling provision is that set forth in the group booklet. The court has determined that under that provision, Mr. King's coverage terminated on March 31, 1988.

In a similar vein, plaintiff cites a number of Mississippi cases which stand for the proposition that an insurer cannot avoid liability by attempting to cancel the policy prior to the due date of a premium. *See Benefit Trust Life Ins. Co. v. Lee*, 248 Miss. 715, 160 So.2d 909 (1964); *Sovereign Camp v. Rhyne*, 171 Miss. 687, 158 So. 472 (1935) (policy was in full force at time of insured's death since insured had not defaulted in payment of premium). Plaintiff's reliance on these authorities is unfounded, however, for the reason that the cited cases addressed an insurer's attempt to cancel a policy for a default in the insured's payment of his premium. Here, there is simply no issue of default since Mr. King himself voluntarily and by affirmative act on his part effected a cancellation of his insurance, following which no further premiums were due upon which he could have or might have defaulted. Plaintiff's citation to *Malta Life Insurance Company v. Estate of Washington*, 552 So.2d 827 (Miss.1989), is likewise misplaced, for in that case the court held merely that the insurer could not deny coverage after the insured's death where it did not cancel the policy prior to his death. Such a ruling is irrelevant to the case *sub judice*, since it was Mr. King, and not Prudential, who cancelled the policy, and Mr. King actually did so prior to his death.[2]

■ Plaintiff also takes the position that her husband's notification of his election to cancel his insurance coverage did not become effective until it was received by Prudential and, since Avondale did not notify Prudential of Mr. King's attempt to delete himself from the group insurance until after his death, the insurance was still in effect at the time of his death. In other words, plaintiff argues that Avondale was not Prudential's agent for the purpose of effecting the cancellation of employees' coverage and therefore, notice to Avondale that King desired to terminate his coverage cannot be equated with notice to Prudential. The relationship between Prudential and Avondale, as reflected by the master group policy, belies plaintiff's position on this point. There is no requirement under the policy that Prudential be notified prior to a loss that an employee has chosen to

---

**2.** Inasmuch as the instant cause of action arises under ERISA, resolution of the issues presented to the court are governed by federal law, not state law. *Matter of HECI Exploration Co., Inc.*, 862 F.2d 513 (5th Cir.1988). Where ERISA does not expressly address the issue under consideration, the court is to devise federal common law to reach a decision and in so doing, may look to state law for guidance so long as the state law in question does not conflict with ERISA. *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986). Here, however, it is unnecessary for the court to determine whether the cited authorities should be incorporated as federal common law on the issue since these cases are in no event applicable to the present factual situation.

cancel his coverage in order for that cancellation to be effective. Instead, the policy provides that either Avondale or Prudential, as they should agree,

> shall keep a record of the insured Employees containing the essential particulars of the insurance. The Policyholder shall forward the information periodically required by Prudential in connection with the administration of the Group Policy and the determination of the premium rates. All records of the Policyholder and of the Employer which have a bearing on the insurance shall be open for inspection by Prudential at any reasonable time.

The policy, therefore, does not require that any certain records relating to the employees insured under the group plan be systematically provided to Prudential, and that was not the actual practice employed between Avondale and Prudential. Avondale maintained the pertinent records and provided them to Prudential, not on a regular or systematic basis but rather as requested and needed by Prudential. The court concludes, therefore, that receipt of notification by Prudential of King's election to cancel his coverage was not necessary to the effectiveness of that cancellation.

Plaintiff makes a number of other arguments in support of her assertion that the policy at issue was not or could not have been effectively cancelled prior to Edmund King's death which are, in the court's view, without merit. The court will nevertheless address these arguments, if only briefly.

■ Plaintiff contends that under the policy, her husband was entitled to a thirty-one day grace period within which to pay his premium and since he died within the grace period, Prudential is liable for the amount of benefits less the premium amount. However, the grace period provided by the policy by its terms applies not to individual employees but to the policyholder, Avondale. Moreover, the grace period is specifically made inapplicable to a situation where the policyholder "makes

written request in advance for termination to take effect at the end of the period for which premiums have been paid." When that occurs, the Group Policy will terminate on the date requested." Thus, even were the grace period generously applied to individual insureds, it would have no application in Mr. King's circumstance since he "request[ed] in advance for termination" to take effect prior to the expiration of any grace period.

■ Plaintiff argues that Prudential has waived forfeiture of the policy by making payment to her under the policy.[3] Both parties recognize that a waiver of forfeiture occurs when an insurer is aware of facts which would allow it to forfeit the policy but acts in a manner inconsistent with forfeiture. Plaintiff's contention that this principle applies here is based on the erroneous premise that the basis for Prudential's denial of her claim was Mr. King's failure to pay his weekly contributions. Clearly, however, that is not the case. Mr. King's coverage was cancelled at his request and in accordance with his instructions and not as a result of his failure to make premium payments. Moreover, there is nothing to suggest that at the time it issued the check, Prudential was aware of the circumstances of Mr. King's cancellation.

■ The policy provides that if the employee dies during the period of thirty-one days after he ceases to be a covered individual and becomes entitled to convert his insurance to an individual policy, benefits are payable under the policy regardless of whether or not the employee applied for conversion. Plaintiff takes the position that she is entitled to this conversion death benefit since Mr. King died within thirty-one days after he ceased to be a covered individual. She is incorrect. The conversion death benefit applies only in the case of one who was a covered individual and who becomes entitled to convert to an individual policy; eligibility for conversion is

---

**3.** On April 21, 1988, Prudential issued a check made payable to plaintiff for benefits under the policy. Prudential, however, stopped payment on the check upon learning of Mr. King's previous cancellation of his policy.

limited to persons who cease to be insureds by reason of:

    (1) termination of his membership in classes eligible for such insurance or

    (2) termination, by amendment or otherwise, of the provisions for such insurance as to the eligible class of which he is a member, provided that at the date of such termination he has been so insured under such provisions (or under such provisions and any Prudential rider or group policy replaced by such provisions) for at least five years prior to such termination date.

Edmund King was not eligible to convert to an individual policy since he did not cease to be insured by reason of termination of his membership in the classes eligible for insurance; his insurance coverage terminated by reason of his own cancellation of same.

    Finally, plaintiff asserts that Mr. King could not have surrendered the policy so as to defeat her rights as beneficiary without her consent because her rights as beneficiary were absolute and vested. Again, plaintiff's position is without merit. It is generally recognized that a policy provision reserving unto the insured the right to change the beneficiary prevents the beneficiary from acquiring any vested interest during the lifetime of the insured. 4 G. Couch, *Couch on Insurance 2d* § 27.59 (1984).[4] The Prudential policy provided that "[a]t any time the Employee may, without the consent of his Beneficiary, change the Beneficiary by filing written notice of the change through the Policyholder on a form satisfactory to Prudential." Thus, the rights of plaintiff to policy proceeds would not have vested until Mr. King died while covered under the policy. Her consent was not required as a condition to the effectiveness of Mr. King's cancellation of the coverage.

    Despite plaintiff's characterization of it as such, this is simply not a case in which the insurer has attempted to retroactively cancel a policy of insurance following a

loss. Rather, this is a case in which the insured himself effected a cancellation of his own coverage before the loss occurred. Accordingly, it is ordered that defendant Prudential's motion for summary judgment is granted.

    A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

    ORDERED.

---

**4.** ERISA does not address this particular issue. Since the rule described by Couch is the general rule and is not inconsistent with ERISA, it will be utilized by the court in addressing plaintiff's argument. *See supra* note 2.