United States Court of Appeals,

Fifth Circuit.

No. 92-7355

Summary Calendar.

SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY, Plaintiff-Counter Defendant-Appellant, Cross-Appellee,

v.

Lou Ann MOORE, Defendant-Counter Plaintiff-Appellee, Cross-Appellant.

June 15, 1993.

Appeals from the United States District Court for the Southern District of Mississippi.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

## I. FACTS AND PROCEDURAL HISTORY

Lou Ann Moore, an employee of Southern Farm Bureau Life Insurance Company ("Southern Farm Life"), a Mississippi corporation, sought to recover accidental death benefits as a beneficiary of an Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 (ERISA) regulated group policy insuring herself and her husband, Cary Moore.[1] Mr. Moore died on April 29, 1989 when he lost control of his vehicle, and it crashed into a shopping center building and burst into flames. The medical testimony is undisputed that Mr. Moore had a brain tumor, a malignant astrocytoma of high grade, and had been suffering from a condition which would cause him to lose consciousness. This condition first occurred in 1983. In fact, in March 1989, just over a month prior to his death, the Ridgeland Fire Department was called to Mr. Moore's house because he had fainted while walking in the street and, in June 1988, the same fire department responded to a call at his house when he had a seizure. Lou Ann Moore was aware that her husband suffered from a condition that would periodically cause him to lose consciousness, and that he was being treated for this condition during 1983 and 1984 by doctors Robinson and Guarnaschelli. Both of these physicians

[1]Southern Farm Life was the issuer and plan administrator of the policy as well as the employer of Mrs. Moore.

as well as Mrs. Moore's medical experts agreed that the tumor caused Moore to lose consciousness or have a seizure which caused the accident.

On August 25, 1989, Mrs. Moore filed with Southern Farm Life, the plan administrator, a completed claim form to obtain accidental death benefits. On October 5, 1989, Joseph Stroble, senior vice-president of claims at Southern Farm Life, after investigating the claim, determined that Mr. Moore's death was caused or contributed to by a brain tumor and therefore the death was excluded from coverage. The policy defined covered injury as "bodily injury caused by an accident resulting directly and independently of all other causes of loss covered by this policy." The policy also contained the following exclusion:

> A loss that is the result of or contributed to by one of the following is not a covered loss even though it was caused by an accidental bodily injury:

> (1) A disease or infirmity of the mind or body.

Southern Farm Life commenced its investigation on May 1, 1989, after Mr. Stroble read a newspaper clipping indicating that a brain tumor caused Cary Moore's death. Southern Farm Life obtained Mr. Moore's death certificate and his autopsy report, both of which stated that he died of a brain tumor. Southern Farm Life then received Mrs. Moore's completed claim forms and medical authorizations on August 25, 1989. After receiving the appropriate medical authorizations, Southern Farm Life obtained records from three physicians who had treated Mr. Moore since 1983. The reports showed Mr. Moore's prior treatment of a brain tumor and were consistent with his autopsy report. Mr. Stroble then decided based upon the evidence available that Cary Moore's death was caused or contributed to by the brain tumor, and therefore Southern Farm Life would not pay benefits because of the policy exclusion. When Stroble made his decision, neither Southern Farm Life nor Mr. Stroble had received opinions from any other physicians as to the cause of Mr. Moore's death. On October 10, 1989 Southern Farm Life filed a declaratory judgment action contending that the policy did not require it to pay benefits for Cary Moore's death, but failed to notify Lou Ann Moore that it was denying her claim. In response, Lou Ann Moore filed a counterclaim for policy benefits and an award of attorney's fees.

At trial, the district court allowed Mrs. Moore to introduce additional evidence. Her medical

expert, Dr. Lloyd White, testified after reviewing slides of the brain tissue, that although the tumor caused Mr. Moore to suffer a seizure or lose consciousness while driving his van, which resulted in the crash, he could not determine whether the tumor directly caused Mr. Moore's death. After a jury trial, the district court rendered judgment based on the jury's verdict for Lou Ann Moore in the amount of $75,000, the full policy amount, in addition to prejudgment and postjudgment interest. The Court denied Southern Farm Life's Motion for Judgment as a Matter of Law and denied Lou Ann Moore's counterclaim for an award of attorney's fees. Southern Farm Life filed a notice of appeal and Lou Ann Moore filed a notice of cross-appeal. Southern Farm Life appeals contending that the district court erred by: (1) failing to review for an abuse of discretion Southern Farm Life's factual determination of the cause of Cary Moore's death, and (2) erroneously instructing the jury so as to increase Southern Farm Life's burden to prove that the death fit within an exclusion. Moore cross-appeals contending that the district court erred by refusing to award her attorney's fees. 793 F.Supp. 702 (S.D.Miss.1992).

## II. DISCUSSION

*A. The Proper Standard of Review*

ERISA governs the insurance policy in the present case. ERISA does not dictate the appropriate standard of review for reviewing benefit determinations of plan administrators. Courts addressing this issue initially adopted the "arbitrary and capricious" standard of review.

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) the Supreme Court addressed the issue for the first time and held if the plan does not give the plan administrator discretionary authority to interpret plan terms, then de novo review is the appropriate standard. *Id.* at 113, 109 S.Ct. at 956. The Supreme Court, however, did not address whether to apply the same standard to a factual determination made by a plan administrator.

This Circuit addressed the issue of the appropriate standard of review to apply to a plan administrator's factual determination in *Pierre v. Conn. Gen. Life Ins. Co.,* 932 F.2d 1552 (5th Cir.1991). Based on facts similar to those in the present case, the court in *Pierre* held that it should review a factual determination made by a plan administrator for an abuse of discretion. In reaching

that decision, the court noted that, according to trust principles, an ERISA fiduciary possesses inherent discretion through a statutory grant of authority to control and manage the operation of the plan.[2]  The Court then noted the difficulty and uncertainty in applying de novo review on a "cold record" and reasoned that in "virtually all decisional review, some deference is given to the fact finder, whether it is a district court giving deference to an administrative body or an appellate court giving deference to the district court."[3]  Accordingly, the Court in *Pierre* ruled that for practical reasons courts simply cannot supplant plan administrators, through de novo review, as resolvers of mundane and routine fact disputes.[4]  Ultimately, we held that "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard;  that is, federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment."[5]

The district court in the present case decided to review the plan administrator's factual determination of the cause of Mr. Moore's death on a de novo basis, apparently because the plan administrator failed to provide Mrs. Moore with notice of the denial of her claim.  Southern Farm Life concedes that it did not provide Lou Ann Moore or her lawyer notice of denial of her claim before filing the declaratory judgment action on October 11, 1989.  However, it contends that failure to provide a written denial does not mean that the abuse of discretion standard announced in *Pierre* is not applicable.

Title 29 C.F.R. § 2560.503-1(h) promulgated pursuant to section 503 of ERISA, 29 U.S.C. § 1133 provides:

> Decision on review.  (1)(i) A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances ... require an extension of time for processing....  The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section.  If the decision on review is not furnished within such time, the claim shall be deemed denied on review.

---

[2]*Id.* (quoting 29 U.S.C. § 1102(a)(1)).

[3]*Id.* at 1559.

[4]*Id.*

[5]*Id.* at 1562.

29 C.F.R. § 2560.503-1(h)(1), (4).

The Supreme Court stated in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985), that this provision "enables a claimant to bring an action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits." When a reviewing body fails to act and the claim is deemed denied on review, "a claimant's appropriate recourse is to seek review of the denial by the district court." *Folke v. Schaffer,* 616 F.Supp. 1322, 1330 (D.Del 1985). In our view, the standard of review is no different whether the claim is actually denied or is deemed denied.[6] The role of the district court is the same in either event, and therefore we hold that the district court erred in reviewing de novo the plan administrator's factual determination of the cause of Mr. Moore's death. However, under *Firestone* we review the plan administrator's interpretation of the policy de novo.

Southern Farm Life contends that in reviewing the plan administrator's decisions, we are limited to evidence that was before the plan administrator when he made his decision to deny benefits. In *Wildbur v. Arco Chemical Co., et al.,* 974 F.2d 631, 642 (5th Cir.1992), the plaintiff employees unsuccessfully applied for early termination benefits under their employer's ERISA regulated pension plan. After the plaintiffs filed suit, the district court denied them relief, in part because it believed that in reviewing the plan administrator's interpretation of the plan, it was limited to evidence presented to the plan administrator. On appeal, this court reversed the district court holding "that a district court is not confined to the administrative record in determining whether, ... a plan administrator abused his discretion in making a benefit determination." *Id.* at 639. The holding in *Wildbur,* however, dealt with an administrator's interpretation of plan terms reviewed under an abuse of discretion standard, not with his factual determinations. In fact, the court in *Wildbur* made clear that "a district court should evaluate the administrator's fact findings regarding the eligibility of a claimant based on the evidence before the administrator...." *Id.* Consequently, in the present case, we may consider only the evidence that was available to the plan administrator in evaluating whether he

---

[6]Our conclusion is buttressed by the fact that Mrs. Moore cites no authority for applying de novo review when a claim is deemed denied.

abused his discretion in making the factual determination that the tumor caused or contributed to Mr. Moore's death, but we may consider other evidence, which was unavailable to the plan administrator as it relates to his interpretation of the policy.[7]

B. *The District Court Erroneously Instructed the Jury as to the Terms of the Policy*

The district court held in its Memorandum Opinion and Order that the policy exclusion excludes a loss contributed to by a bodily infirmity or disease only when that bodily infirmity or disease is a concurring proximate cause of death. The district court stated "the policy does not unambiguously bar recovery where bodily infirmity or disease is merely a remote cause." Accordingly, the district court instructed the jury that "in order for Southern Farm Life to sustain its burden to prove that a disease or infirmity of the mind or body contributed to a loss so as exclude coverage under the policy for Mr. Moore's death, it is not sufficient for it to prove that the brain tumor contributed to the accident and resulting fire, but instead, Southern Farm Life must prove that the brain tumor contributed to the death." Southern Farm Life contends that instruction improperly required it to prove that the brain tumor was a concurrent proximate cause of Mr. Moore's death to fit within the exclusion. Since ERISA does not provide guidance on the issue presented in the present case, this Court may look to general principles of common law or state law that may be persuasive.[8] Southern Farm Life relies on *Sekel v. Aetna Life Insurance Company,* 704 F.2d 1335 (5th Cir.1983), which applied Texas state law to support its position. The facts in *Sekel* are substantially similar to the facts in the present case. In *Sekel,* the insured fell to the floor and sustained a severe blow to the head, which resulted in his death one hour after the fall. The immediate cause of his death was the blow to his head, but the fall was attributed to a preexisting disease, "severe atherosclerotic and hypertensive cardiovascular disease," a natural condition, which had caused him to pass out and fall to the floor. Besides the medical testimony being very similar to the most favorable view of the

---

[7]The court in *Wildbur* expressly refused to decide whether a court should limit its review to evidence presented to the administrator in reviewing de novo an administrator's interpretation of plan terms. For purposes of this appeal, we will assume without deciding that an administrator can consider such evidence. In any regard, there is no evidence, which was not presented to the administrator that is now available, that bears on the administrator's interpretation of the policy.

[8]29 U.S.C. §§ 1001-1461 (1988).

medical testimony proffered by Mrs. Moore in the present case, the exclusion clause in the Aetna Company policy was nearly identical to the exclusion clause in Southern Farm Life's policy. The exclusion in Southern Farm Life's policy denies coverage for accidental death benefits respecting "a loss that is a result of or contributed to by one of the following ... even though it was caused by an accidental bodily injury:

(1) A disease or infirmity of the mind or body."

Similarly, the exclusion in Aetna's policy in *Sekel* stated: "[t]he insurance provided under this policy does not include, and no payment shall be made for, any loss resulting from any injury caused or contributed to by, or as a consequence of, any of the following excluded risks, even though the proximate or precipitating cause of loss is accidental bodily injury:

(a) bodily or mental infirmity

(b) disease ..."

The court in *Sekel* held that the exclusion clause precluded coverage because the "disease" or "bodily infirmity" of the insured caused or contributed to his death, although his fall was the proximate or precipitating cause of his death. In reaching its conclusion, the *Sekel* court reasoned that the exclusion clause envisioned a situation where the proximate or precipitating cause of the loss was accidental bodily injury, and further clearly provided that even though the accidental injury was the proximate or precipitating cause, if disease or bodily injury was also a contributing factor or cause, there was no coverage. The court reasoned that because the exclusion clause was applicable when the proximate or precipitating cause of loss was an accidental injury, then necessarily other contributing factors or causes that the policy excluded need not be concurrent proximate or immediately precipitating causes for the exclusion to have effect. *Id.* at 1338-41. In conclusion, *Sekel* held "a loss, a functionally closely related significant cause or contributing factor of which is a noncovered risk, is excluded from the policy's accidental death benefits even though a covered risk is the proximate and more immediately precipitating cause of the loss."[9] *Id.* at 1338.

---

[9]Similarly, *Britt v. Travelers Ins. Co.,* 556 F.2d 336 (5th Cir.1977), *modified on rehearing,* 566 F.2d 1020 (5th Cir.1978), interpreting Mississippi law, reached the same result in the context of interpreting an exclusion clause in a double indemnity provision. The exclusion clause in *Britt*

Mrs. Moore contends that the exclusion in the present case is distinguishable from the exclusion in *Sekel* in that the exclusion in *Sekel* contains the words "the proximate or precipitating cause of loss." Because this language does not appear in Southern Farm Life's exclusion, Mrs. Moore contends such exclusion precludes recovery only when the disease or bodily infirmity is a concurring proximate cause of the loss. We disagree. The terms of the exclusion clause in the present case, even without the language would preclude recovery of accidental death benefits if the brain tumor was a concurrent proximate cause of Mr. Moore's death. *See Sekel* at 1342.[10] *See also Travelers Insurance Co. v. Cowart,* 196 So.2d 887, 88 (Miss.1967). A court should not interpret a policy to leave specific provisions without meaning or effect. *Sekel* at 1339. If we interpreted the "even though" phrase to exclude only concurrent proximate causes of loss, as the district court did, the "even though" language would be rendered meaningless and without effect. *Sekel,* 704 F.2d at 1339-40. Moreover, the words of an insurance contract should be given their plain meaning. *Aero International Inc. v. United States Fire Ins. Co.,* 713 F.2d 1106 (5th Cir.1983); *Chambers v. Prudential Ins. Co. of America,* 776 F.Supp. 1166, 1169 (S.D.Miss.1991), *aff'd,* 947 F.2d 1487 (5th Cir.1991). Southern Farm Life used clear language in its exclusion clause to convey its intent that the clause excluded a loss contributed to by a "disease" or "infirmity of the body" even though the "disease" or "infirmity of the body" was not a proximate cause of the loss, and we will interpret that clear language according to its plain meaning.

Taking the evidence available to Stroble when he made his decision to deny benefits, it was not an abuse of discretion for him to determine Mr. Moore's brain tumor, a "disease" or "infirmity of

---

stated "death must not be as a result of or contributed to by "any bodily or mental infirmity or disease, even though the proximate or precipitating cause of death is accidental bodily injury.' " *Id.* at 341. In *Britt,* the insured's proximate cause of death was exposure, which was covered under the double indemnity provision, but he had preexisting "drug and disease weakening of the heart and other organs" that might have been a contributing cause of his death. In reversing the district court, this court held that if the preexisting disease contributed to death, even if it was not a proximate cause of death, then the death was excluded from coverage under the double indemnity provision.

[10]In *Sekel,* this Court stated that "where policies provide that an accident must "directly and independently' be the cause of a loss, the general rule is that if disease is a concurrent proximate cause, the insurance company is not liable." *Sekel,* 704 F.2d at 1342 (citation omitted).

the body," caused or contributed to his death. Even under Mrs. Moore's expert's view of the facts, which were unavailable to the administrator and which we are prohibited from considering in reviewing the administrator's factual determinations, the tumor caused Mr. Moore to pass out, which in turn caused him to lose control of his vehicle and caused his vehicle to crash into a store and burst into flames. Under our interpretation of the policy, whether the explosion and fire ultimately caused his death, or the seizure and loss of consciousness resulting from the brain tumor caused him to crash, which caused his death, the loss was excluded from coverage.

## III. CONCLUSION

We conclude that the purpose and clear meaning of the exclusion clause was to bar recovery in cases where the death of the insured was caused or significantly contributed to by an excluded risk such as a "disease" or "infirmity of the body," even if an accidental injury was the proximate or precipitating cause of death. Southern Farm Life conducted a reasonable investigation, and based on information available to it—including Mr. Moore's original death certificate, autopsy report, and medical records—concluded that Mr. Moore's death was caused or contributed to by a brain tumor. As the plan administrator, it then made a reasonable decision to deny benefits. Considering the evidence available to the administrator and our interpretation of the policy, we hold that the administrator's factual determination that Mr. Moore's death was caused or contributed to by the brain tumor was not an abuse of discretion and that its interpretation of the policy was correct. This case should have never been submitted to a jury.

For the foregoing reasons, the judgment of the district court is REVERSED and judgment is RENDERED for Southern Farm Life.